UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SCOTT PADOVA,

          Plaintiff,

v.                                 Case No. 1:13-cv-23251-UU

CARRINGTON MORTGAGE SERVICES,
LLC

          Defendant.

_____/

## CARRINGTON'S ANSWER AND AFFIRMATIVE DEFENSES

Carrington Mortgage Services, LLC ("Carrington"), by its counsel, answers and responds to Plaintiff Scott Padova's ("Padova") "Verified Complaint" as follows:

### Answers to Allegations Regarding Jurisdiction

1.      This is an action for damages that are less than $15,000.00, exclusive of attorney's fees, pre-judgment interest and costs.  This is also an action for injunctive relief as provided by Florida Statutes §559.77(2).  This action is brought by a consumer for Defendant's violations of Florida Statutes §§ 559.55-559.785, known more commonly as the "Florida Consumer Collection Practices Act", ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA").  These laws prevent respectively, debt collectors and persons from, inter alia, engaging in abusive, deceptive, and unfair collection practices.

**ANSWER**:    Carrington admits that Padova filed a complaint making various allegations, but denies that Carrington engaged in any violation of law or other wrongdoing, denies any and all alleged liability to Padova, and otherwise denies the remaining allegations contained in this Paragraph.

2.      Personal jurisdiction is proper pursuant to the Florida Long-Arm Jurisdiction Statute through the causation of injury in this state caused by acts or omissions outside the state.

**ANSWER**:    The allegations contained in this Paragraph constitute legal conclusions rather than allegations of fact, and therefore no response is required.  Carrington does not contest

personal jurisdiction in this matter.

3.      Venue is proper in this court the actions that are the subject of this action accrued in MIAMI-DADE County, Florida.

**ANSWER**:    The allegations contained in this Paragraph constitute legal conclusions rather than allegations of fact, and therefore no response is required.  Carrington does not contest venue in this matter.

### Answers to Allegations Regarding Parties

4.      At all times material hereto, Defendant, CARRINGTON was and is a foreign Limited Liability Corporation, incorporated under the laws of the State of Delaware and lists its registered agent as The Corporate Trust Company, 1209 Orange Street, Wilmington, DE 19801.

**ANSWER**:    Carrington denies the allegations contained in this Paragraph, and affirmatively states that it is a limited liability company organized under the laws of Delaware, and that its registered agent is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

5.      At all times material hereto, CARRINGTON was and is a "person" as said term is defined under Florida Statute §1.01(3).

**ANSWER**:    The allegations contained in this Paragraph constitute legal conclusion rather than allegations of fact, and therefore no response is required.  To the extent a response may be required, Carrington denies the allegations contained in this Paragraph.

6.      At all times material hereto, CARRINGTON regularly collects or attempts to collect debts for other parties and is a "debt collector" as said term is defined under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

**ANSWER**:    Carrington states that the allegations contained in this Paragraph constitute legal conclusion rather than allegations of fact, and therefore no response is required.  To the extent a response may be required, Carrington denies the allegations contained in this Paragraph.

7.      At all times material hereto, the Plaintiff, is and was a natural person, and is a "consumer" as that term is defined by 15 U.S.C. §1692(a)(3) and Florida Statutes §559.55(2),

2

and/or a person with standing to bring a claim under the FCCPA and FDCPA by virtue of being directly affected by violations of the Act.

**ANSWER**:   Carrington lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

8.      At all times material hereto, the mortgage debt in question was a "debt" as said term is defined under 15 U.S.C. §1692a(5) and Florida Statute §559.55(1).

**ANSWER**:   The allegations contained in this Paragraph constitute legal conclusion rather than allegations of fact, and therefore no response is required.   To the extent a response may be required, Carrington lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this Paragraph.

9.      At all times material hereto, the communications alleged herein were "communications" as said term is defined under Florida Statute §559.55(5).

**ANSWER**:   The allegations contained in this Paragraph constitute legal conclusion rather than allegations of fact, and therefore no response is required.   To the extent a response may be required, Carrington denies the allegations contained in this Paragraph.

10.      At all times material hereto, CARRINGTON regularly collects or attempts to collect debts for other parties and is a "debt collector" as said term is defined under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

**ANSWER**:   The allegations contained in this Paragraph constitute legal conclusion rather than allegations of fact, and therefore no response is required.   To the extent a response may be required, Carrington denies the allegations contained in this Paragraph.

11.      CARRINGTON regularly uses the mail and telephone in a business the principal purpose of which is the collection of debts.

**ANSWER**:   Carrington admits only that it sometimes uses the mail and telephone for the purpose of collecting debts, but otherwise denies the allegations contained in this Paragraph.

**Answers to Background and General Allegations**

12.      A foreclosure action was filed against Plaintiff in MIAMI-DADE County Circuit Court.

**ANSWER**:     Carrington admits the allegations contained in this Paragraph.

13.      Plaintiff retained Loan Lawyers, LLC, for representation with regard to a disputed debt arising from a mortgage for which the Defendant now provides servicing.

**ANSWER**:     Carrington admits that it is the servicer for a mortgage loan secured by the real estate commonly known as 1750 N. Bayshore Drive, Miami, Florida 33132 (the "Subject Loan"), but Carrington lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this Paragraph.

14.      On or about February 25, 2013, Loan Lawyers, LLC, as counsel for Plaintiff, served and filed their Notice of Appearance in the foreclosure action.  A copy of same is attached and incorporated herein as Exhibit "A".

**ANSWER**:     Carrington admits only that a document titled "Notice of Appearance and Designation of E-Mail Address" is attached to the Complaint, but denies that this document is labeled Exhibit A.  Carrington otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this Paragraph.

15.      Since that time, counsel for Plaintiff has filed pleadings and numerous motions and correspondence with the counsel in the Foreclosure action.

**ANSWER:**     Carrington lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph.

16.      On or about April 16, 2013, Plaintiff sent Wells Fargo Home Mortgage, the plaintiff in the above referenced foreclosure action, a letter indicating that Plaintiff was represented by Loan Lawyers, LLC, regarding all aspects of the subject mortgage debt. Defendant was informed that all communications regarding the subject mortgage debt were to be directed to Plaintiff's counsel.  The letter provided the mailing address and phone number for Loan Lawyers, LLC.  A copy of same is attached and incorporated herein as Exhibit "B".

**ANSWER**:     Carrington admits a letter dated April 16, 2013 is attached to the Complaint, but denies it is labeled Exhibit B, and admits the allegations contained in this Paragraph only to the

extent they are consistent with the April 16, 2013 letter.  Carrington otherwise lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations contained in

this Paragraph.

17.     Defendant has since that time, alleged to have replaced Wells Fargo as the servicer on the disputed debt in the foreclosure action.

**ANSWER**:   Carrington is unable to discern what is meant by "alleged to have replaced" and

"the disputed debt in the foreclosure action," but attempting to respond, Carrington admits only

that it is the servicer for the Subject Loan, but Carrington otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

this Paragraph.

18.     Defendant was only hired as the servicer upon the disputed debt to attempt to collect upon the disputed debt.

**ANSWER**:   Carrington is unable to discern what is meant by "upon the disputed debt," but

attempting to respond, Carrington admits only that it is the servicer of the Subject Loan, but

otherwise denies the allegations contained in this Paragraph.

19.     On or about April 19, 2013, at approximately 1:00 p.m., Defendant communicated directly with Plaintiff's counsel via email, demonstrating that Defendant was aware that Plaintiff was represented by counsel in regard to the disputed debt.

**ANSWER**:   Carrington is unable to discern what is meant by "the disputed debt," but

attempting to respond, Carrington denies the allegations contained in this Paragraph.

20.     The debt that Defendant sought to collect from Plaintiff is an alleged debt arising from transactions entered into primarily for personal, family or household purposes.

**ANSWER**:   The allegations contained in this Paragraph constituted legal conclusion rather

than allegations of fact, and therefore no response is required.  To the extent a response may be

required, Carrington denies the allegations contained in this Paragraph.

21.     All of Defendant's actions in regard to the disputed debt have been for the

purpose of collecting the disputed debt.

**ANSWER**:   Carrington is unable to discern what is meant by "the disputed debt," but

attempting to respond, Carrington denies the allegations contained in this Paragraph.

22.   Defendant was aware that Plaintiff was represented by counsel in regard to the disputed debt and was aware of the nature and scope of same.

**ANSWER**:   Carrington is unable to discern what is meant by "the disputed debt," but

attempting to respond, Carrington denies the allegations contained in this Paragraph.

**ANSWER TO COUNT I**
**Alleged Violation of FCCPA, Florida Statutes §559.72(18)**

23.   Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 20 [*sic*].

**ANSWER**:   Carrington restates and incorporates by reference its answers and responses to

Paragraphs 1-22 as its answer and response to this Paragraph.

24.   Defendant communicated with Plaintiff multiple times in connection with the collection of a debt, including on or about May 16, 2013, May 20, 2013, and May 22, 2013 when Defendant mailed Plaintiff letters at Plaintiff's primary residence.  A copy of same are attached and incorporated herein as Exhibit "C", "D" and "E" respectively.

**ANSWER**:   Carrington admits that it sent correspondence to Padova dated May 16, 2013, May

20, 2013 and May 22, 2013, and that copies of the correspondence are attached to the Complaint,

but denies that the correspondence are labeled with exhibit numbers, and admits the allegations

contained in this Paragraph only to the extent they are consistent with the correspondence dated

May 16, 2013, May 20, 2013 and May 22, 2013.  Carrington otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

this Paragraph.

25.   The letters urged Plaintiff to contact Defendant in connection with the collection of a debt, and itself was an attempt to collect a debt.

**ANSWER**:   Carrington admits the allegations contained in this Paragraph only to the extent

they are consistent with the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013, but Carrington otherwise denies the allegations contained in this Paragraph.

26.     The letters provided a phone number for Defendant's collections line, a telephone line which Defendant staffs with representatives of Defendant and whose purpose is to solicit payments from consumers.

**ANSWER**:     Carrington is unable to discern what is meant by "collections line," but attempting to respond, Carrington admits the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013 each provide a telephone number for Carrington, but Carrington otherwise denies the allegations contained in this Paragraph.

27.     Defendant's May 16, 2013 letter makes explicit demands for payment, instructing Plaintiff to make payments to Defendant and providing details on how to do so.

**ANSWER**:     Carrington admits the allegations contained in this Paragraph only to the extent they are consistent with the Correspondence dated May 16, 2013, but Carrington otherwise denies the allegations contained in this Paragraph.

28.     Each letter was a communication with the Plaintiff when Defendant knew that the Plaintiff was represented by an attorney with respect to the alleged debt and had knowledge of Loan Lawyers, LLC's name, address, and telephone number.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

29.     As admitted in Plaintiff's May 22, 2013 letter, Defendant communicated with Plaintiff multiple times in connection with the collection of a debt by calling Plaintiff's telephone.

**ANSWER**:     Carrington admits the allegations contained in this Paragraph only to the extent they are consistent with the Correspondence dated May 22, 2013, but Carrington otherwise denies the allegations contained in this Paragraph.

30.     The phone calls were each communication with the Plaintiff when Defendant knew that the Plaintiff was represented by an attorney with respect to the alleged debt and had knowledge of Loan Lawyers, LLC's name, address, and telephone number.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

7

31.     Defendant communicated with Plaintiff a number of other times after Defendant was aware that Plaintiff was represented by counsel in regard to the disputed debt.

**ANSWER:**     Carrington denies the allegations contained in this Paragraph.

32.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FCCPA in that Defendant contacted Plaintiff in connection with the collection of a debt after Defendant knew that Plaintiff was represented by counsel, and had knowledge of counsel's name and address, in contravention of Florida Statutes §559.72(18).

**ANSWER:**     Carrington denies the allegations contained in this Paragraph.

33.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated Florida Statutes §559.72(18).

**ANSWER:**     Carrington denies the allegations contained in this Paragraph.

34.     Plaintiff has hired Loan Lawyers, LLC, to represent Plaintiff in this action and has agreed to pay a reasonable attorney's fee.

**ANSWER:**     Carrington lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this Paragraph.

35.     As a result of the above violations of the FCCPA, pursuant to Florida Statute 559.77(2), Plaintiff is entitled to recovery for statutory damages of up to $1000 per violation, together with actual damages, reasonable attorney's fees and court costs.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

WHEREFORE, Carrington denies any and all alleged liability in this matter, requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court grant such further and additional relief as it deems just and appropriate.

### ANSWER TO COUNT II
### Alleged Violation of FCCPA, Florida Statutes §559.72(7).

36.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 20 [*sic*].

**ANSWER**:     Carrington restates and incorporates by reference its answers and responses to

Paragraphs 1-35 as its answer and response to this Paragraph.

37.     Prior to retaining counsel on this matter, Plaintiff received relentless requests for payments from Defendant.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

38.     As a result of the above-mentioned communications, Plaintiff experienced mental pain, shock, suffering, aggravation, humiliation, embarrassment and sleeplessness.  The thought of Plaintiff losing Plaintiff's home and primary residence has caused Plaintiff to experience a high degree of anxiety.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

39.     Plaintiff was so distraught with the thought of losing Plaintiff's home, Plaintiff retained the undersigned law firm to represent Plaintiff and to deal directly with the Defendants so that Plaintiff would no longer have to deal with the Defendant.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

40.     Plaintiff signed the cease and desist letter attached hereto as Exhibit "B" to avoid any further communication with the Defendant.

**ANSWER**:     Carrington denies a letter labeled Exhibit B is attached to the Complaint, but attempting to respond, Carrington states that the letter that is attached to the Complaint dated April 16, 2013, and purportedly signed by Padova on February 11, 2013, is addressed to Wells Fargo Home Mortgage, and therefore Carrington denies the allegations contained in this Paragraph.

41.     The letter specifically advised that all contacts were to be ceased immediately.

**ANSWER**:     Carrington is unable to discern what is meant by "the letter," but attempting to respond, Carrington admits the allegations contained in this Paragraph only to the extent they are consistent with the letter dated April 16, 2013 and purportedly signed by Padova on February 11, 2013.  Carrington otherwise denies the allegations contained in this Paragraph.

42.     Upon retaining counsel, Plaintiff was finally confident that Plaintiff would no longer have to interact with the Defendant.

**ANSWER**:      Carrington denies the allegations contained in this Paragraph.

43.      When Plaintiff received Defendant's May 16, 2013, May 20, 2013 and May 22, 2013 letters, Plaintiff was, understandably, quite distressed.  A copy of same are attached and incorporated herein as Exhibit "C", "D" and "E" respectively.

**ANSWER**:      Carrington admits only that it sent correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013 are attached to the Complaint, but denies that the correspondence are labeled with exhibit numbers, and Carrington denies the remaining allegations contained in this Paragraph.

44.      The letters urged Plaintiff to contact Defendant in connection with the collection of a debt, and each was an attempt to collect a debt.

**ANSWER**:      Carrington admits the allegations contained in this Paragraph only to the extent they are consistent with the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013, but Carrington otherwise denies the allegations contained in this Paragraph.

45.      The letters provided a phone number for Defendant's collections line, a line which Defendant staffs with representatives of Defendant and whose purpose is to solicit payments from consumers.

**ANSWER**:      Carrington is unable to discern what is meant by "collections line," but attempting to respond, Carrington admits the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013 each provide a telephone number for Carrington, but Carrington otherwise denies the allegations contained in this Paragraph.

46.      Plaintiff was also distressed and harassed when Plaintiff received a number of telephones [*sic*] from Defendant between April 15, 2013 and the present date.

**ANSWER**:      Carrington denies the allegations contained in this Paragraph.

47.      Each phone call was a communication in connection with the collection of a debt, and each was an attempt to collect a debt.

**ANSWER**:      Carrington denies the allegations contained in this Paragraph.

48.      Defendant had been communicating with the undersigned law firm and could

10

have contacted the undersigned law firm.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

49.     Instead, Defendant chose to harass the Plaintiff by contacting Plaintiff directly.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

50.     Defendant communicated with Plaintiff a number of other times after Defendant was aware that Plaintiff was represented by counsel in regard to the disputed debt.

**ANSWER:**     Carrington denies the allegations contained in this Paragraph.

51.     By directly engaging in the above referenced communications with Plaintiff, Defendant increased the severity of Plaintiff's suffering and engaged in conduct which was harassing.

**ANSWER:**     Carrington denies the allegations contained in this Paragraph.

52.     In the above referenced communications, Defendant circumvented Plaintiff's counsel and attempted to trick Plaintiff into giving up Plaintiff's home by offering Plaintiff both a deed in lieu of foreclosure and a short sale, thereby engaging in abusive conduct towards Plaintiff.

**ANSWER:**     Carrington denies the allegations contained in this Paragraph.

53.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FCCPA in that Defendant has engaged in harassing and abusive conduct towards Plaintiff, in contravention of Florida Statutes §559.72(7).

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

54.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated Florida Statutes §559.72(7).

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

55.     Plaintiff has hired Loan Lawyers, LLC, to represent Plaintiff in this action and has agreed to pay a reasonable attorney's fee.

**ANSWER**:     Carrington lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this Paragraph.

56.     As a result of the above violations of the FCCPA, pursuant to Florida Statute §559.77(2), Plaintiff is entitled to recovery for statutory damages of up to $1000 per violation,

together with actual damages, reasonable attorney's fees and court costs.

**ANSWER:**   Carrington denies the allegations contained in this Paragraph.

WHEREFORE, Carrington denies any and all alleged liability in this matter, requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court grant such further and additional relief as it deems just and appropriate.

## ANSWER TO COUNT III
### Alleged Violation of FDCPA:  15 U.S.C. 1692(b)

57.   Plaintiff repeats, realleges and incorporates by reference paragraphs 1 though 20 [*sic*].

**ANSWER**:   Carrington restates and incorporates by reference its answers and responses to Paragraphs 1-56 as its answer and response to this Paragraph.

58.   Defendant communicated with Plaintiff multiple times in connection with the collection of a debt, including on or about May 16, 2013, May 20, 2013 and May 22, 2013 when Defendant mailed Plaintiff letters at Plaintiff's primary residence.  A copy of same are attached and incorporated herein as Exhibit "C", "D" and "E" respectively.

**ANSWER**:   Carrington admits that it sent correspondence to Padova dated May 16, 2013, May 20, 2013 and May 22, 2013, and that copies of the correspondence are attached to the Complaint, but denies that the correspondence are labeled with exhibit numbers, and admits the allegations contained in this Paragraph only to the extent they are consistent with the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013, but Carrington otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this Paragraph.

59.   The letters urged Plaintiff to contact Defendant in connection with the collection of a debt, and itself was an attempt to collect a debt.

**ANSWER**:   Carrington admits the allegations only to the extent they are consistent with the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013, and otherwise denies the

allegations contained in this Paragraph.

60.     The letters provided a phone number for Defendant's collections line, a telephone line which Defendant staffs with representatives of Defendant and whose purpose is to solicit payments form consumers.

**ANSWER**:     Carrington is unable to discern what is meant by "collections line," but attempting to respond, Carrington admits the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013 each provide a telephone number for Carrington, but otherwise denies the allegations contained in this Paragraph.

61.     Defendant's May 16, 2013 letter makes explicit demands for payment, instructing Plaintiff to make payments to Defendant and providing details on how to do so.

**ANSWER**:     Carrington admits the allegations only to the extent they are consistent with the Correspondence dated May 16, 2013, and otherwise denies the allegations contained in this Paragraph.

62.     Each letter was a communication with the Plaintiff when Defendant knew that the Plaintiff was represented by an attorney with respect to the alleged debt and had knowledge of Loan Layers, LLC's name, address and telephone number.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

63.     As admitted in Plaintiff's May 22, 2013 letter, Defendant communicated with Plaintiff multiple times in connection with the collection of a debt by calling Plaintiff's telephone.

**ANSWER**:     Carrington admits the allegations only to the extent they are consistent with the Correspondence dated May 22, 2013, and otherwise denies the allegations contained in this Paragraph.

64.     The phone calls were each communication with the Plaintiff when Defendant knew that the Plaintiff was represented by an attorney with respect to the alleged debt and had knowledge of Loan Layers, LLC's name, address, and telephone number.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

65.     Defendant communicated with Plaintiff a number of other times after Defendant

13

was aware that Plaintiff was represented by counsel in regard to the disputed debt.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

66.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FDCPA in that Defendant contacted Plaintiff in connection with the collection of a debt after Defendant knew that Plaintiff was represented by counsel, and had knowledge of counsel's name and address, in contravention of 15 U.S.C. 1692(b).

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

67.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated 15 U.S.C. 1692(b).

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

68.     Plaintiff has hired Loan Lawyers, LLC, to represent Plaintiff in this action and has agreed to pay a reasonable attorney's fee.

**ANSWER**:     Carrington lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this Paragraph.

69.     As a result of the above violations of the FDCPA, pursuant to 15 U.S.C. §1692k, Plaintiff is entitled to recovery for statutory damages of up to $1000 per violation, together with actual damages, reasonable attorney's fees and courts costs.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

WHEREFORE, Carrington denies any and all alleged liability in this matter, requests that

judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and

requests that this Court grant such further and additional relief as it deems just and appropriate.

## ANSWER TO COUNT IV
### Alleged Violation of FDCPA:  15 U.S.C. 1692(d)

70.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 20 [*sic*].

**ANSWER**:     Carrington restates and incorporates by reference its answers and responses to

Paragraphs 1-69 as its answer and response to this Paragraph.

71. Prior to retaining counsel on this matter, Plaintiff received relentless requests for payments from Defendant.

**ANSWER**:   Carrington denies the allegations contained in this Paragraph.

72. As a result of the above-mentioned communications, Plaintiff experienced mental pain, shock, suffering, aggravation, humiliation, embarrassment and sleeplessness.  The thought of Plaintiff losing Plaintiff's home and primary residence has caused Plaintiff to experience high degree of anxiety.

**ANSWER**:   Carrington denies the allegations contained in this Paragraph.

73. Plaintiff was so distraught with the thought of losing Plaintiff's home, Plaintiff retained the undersigned law firm to represent Plaintiff and to deal directly with the Defendant so that Plaintiff would no longer have to deal with the Defendant.

**ANSWER**:   Carrington denies the allegations contained in this Paragraph.

74. Plaintiff signed the cease and desist letter attached hereto as Exhibit "B" to avoid any further communication with the Defendant.

**ANSWER**:   Carrington denies a letter labeled Exhibit B is attached to the Complaint, but attempting to respond, Carrington states that the letter that is attached to the Complaint dated April 16, 2013, and purportedly signed by Padova on February 11, 2013, is addressed to Wells Fargo Home Mortgage, and therefore Carrington denies the allegations contained in this Paragraph.

75. The letter specifically advised that all contacts were to be ceased immediately.

**ANSWER**:   Carrington is unable to discern what is meant by "the letter," but attempting to respond, Carrington admits the allegations contained in this Paragraph only to the extent they are consistent with the letter dated April 16, 2013 and purportedly signed by Padova on February 11, 2013, and otherwise denies the allegations contained in this Paragraph.

76. Upon retaining counsel, Plaintiff was finally confident that Plaintiff would no longer have to interact with the Defendant.

**ANSWER**:   Carrington denies the allegations contained in this Paragraph.

77.     When Plaintiff received Defendant's May 16, 2013, May 20, 2013 and May 22, 2013 letters, Plaintiff was, understandably, quite distressed.  A copy of same are attached and incorporated herein as Exhibits "C", "D" and "E" respectively.

**ANSWER**:     Carrington admits only that it sent correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013 are attached to the Complaint, but denies that the correspondence are labeled with exhibit numbers, and Carrington denies the remaining allegations contained in this Paragraph.

78.     The letters urged Plaintiff to contact Defendant in connection with the collection of a debt, and each was an attempt to collect a debt.

**ANSWER**:     Carrington admits the allegations only to the extent they are consistent with the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013, and otherwise denies the allegations contained in this Paragraph.

79.     The letters provided a phone number for Defendant's collections line, a line which Defendant staffs with representatives of Defendant and whose purpose is to solicit payments form consumers.

**ANSWER**:     Carrington is unable to discern what is meant by "collections line," but attempting to respond, Carrington admits only that the correspondence dated May 16, 2013, May 20, 2013 and May 22, 2013 each provide a telephone number for Carrington, but otherwise denies the allegations contained in this Paragraph.

80.     Plaintiff was also distressed and harassed when Plaintiff received a number of telephones [*sic*] from Defendant between April 15, 2013 and the present date.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

81.     Each phone call was a communication in connection with the collection of a debt, and each was an attempt to collect a debt.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

82.     Defendant had been communicating with the undersigned law firm and could have contacted the undersigned law firm.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

83.     Instead, Defendant chose to harass the Plaintiff by contacting Plaintiff directly.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

84.     Defendant communicated with Plaintiff a number of other times after Defendant was aware that Plaintiff was represented by counsel in regard to the disputed debt.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

85.     By directly engaging in the above referenced communications with Plaintiff, Defendant increased the severity of Plaintiff's suffering and engaged in conduct which was harassing.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

86.     In the above referenced communications, Defendant circumvented Plaintiff's counsel and attempted to trick Plaintiff into giving up Plaintiff's home by offering Plaintiff both a deed in lieu of foreclosure and a short sale, thereby engaging in abusive conduct towards Plaintiff.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

87.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FDCPA in that Defendant has engaged in harassing and abusive conduct towards Plaintiff, in contravention of 15 U.S.C. 1692(d), which reads in part that "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

88.     Defendant, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated 15 U.S.C. 1692(d).

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

89.     Plaintiff has hired Loan Lawyers, LLC, to represent Plaintiff in this action and has agreed to pay a reasonable attorney's fee.

**ANSWER**:     Carrington lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in this Paragraph.

90.     As a result of the above violations of the FDCPA, pursuant to 15 U.S.C. §1692k, Plaintiff is entitled to recovery for statutory damages of up to $1000 per violation, together with

actual damages, reasonable attorney's fees and court costs.

**ANSWER**:     Carrington denies the allegations contained in this Paragraph.

WHEREFORE, Carrington denies any and all alleged liability in this matter, requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court grant such further and additional relief as it deems just and appropriate.

### AFFIRMATIVE DEFENSES

For its Affirmative Defenses, Carrington states the following in opposition to Padova's allegations:

1.     Carrington is the current servicer of a loan extended to Padova that is secured by a mortgage on the real estate commonly known as 1750 N. Bayshore Drive, Miami, Florida 33132 (the "Subject Loan").

### First Affirmative Defense

2.     Carrington restates and incorporates by reference the facts stated in Paragraph 1 of its Affirmative Defenses above.

3.     The "Verified Complaint," and each purported claim contained therein, fails to state a claim upon which relief may be granted, and Carrington reserves and does not waive any argument relating to the legal sufficiency of Padova's allegations.

WHEREFORE, Carrington requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court provide such further and additional relief as it deems just and appropriate.

### Second Affirmative Defense

4.     Carrington restates and incorporates by reference the facts stated in Paragraph 1 of its Affirmative Defenses above.

5.      Carrington denies that it violated any provision of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and denies that it violated any provision of the Florida Consumer Collection Practices Act, §§ 559.55 Fla. Stat. (2012), *et seq.* ("FCCPA").

6.      Nevertheless, any alleged violation by Carrington would have been unintentional, resulting from a bona fide error made in good faith, and occurring despite Carrington's processes and procedures that were reasonably designed and actually implemented to avoid any such alleged error.

7.      When Carrington receives notice that one of its customers is represented by counsel, Carrington requires that a flag be placed on the matter in Carrington's systems, and that its personnel immediately substitute the customer's counsel's contact information in Carrington's systems in place of the customer's contact information, in order that call future calls and communications are directed only to the customer's counsel and not to the customer.  This is often referred to as a "communications stop."

8.      To the extent the allegations here were any deviation from Carrington's above-referenced mandatory policies and procedures, the deviation was inadvertent and was done notwithstanding Carrington's policies and procedures to the contrary.

9.      Therefore, to the extent that there may have been an alleged error in Carrington's communications with Padova regarding his mortgage loan, the communications were not the result of a knowing or intentional act or acts by Carrington, and were thus an unknowing and unintentional bona fide error, notwithstanding the maintenance of mandatory procedures reasonably adapted by Carrington to avoid such error.

10.      Accordingly, even if a violation had in fact occurred as alleged, Carrington would not be liable pursuant to 15 U.S.C. § 1692k(c) and/or Fla. Stat § 559.77(3).

WHEREFORE, Carrington requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court provide such further and additional relief as it deems just and appropriate.

### Third Affirmative Defense

11.     Carrington restates and incorporates by reference the facts stated in Paragraph 1 of its Affirmative Defenses above.

12.     To the extent Padova suffered any alleged damages, the existence of which are expressly denied, the alleged damages are barred and/or limited in whole or in part by Padova's own failure to mitigate the alleged damages, the alleged damages were caused in whole or in part by his own acts or omissions, and/or the alleged damages were caused in whole or in part by individuals and/or entities over whom Carrington had no control, right of control or responsibility.

WHEREFORE, Carrington requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court provide such further and additional relief as it deems just and appropriate.

### Fourth Affirmative Defense

13.     Carrington restates and incorporates by reference the facts stated in Paragraph 1 of its Affirmative Defenses above.

14.     Statutory damages under the FDCPA are capped at $1,000 per action, regardless of the number of alleged FDCPA violations asserted in the action.  *See* 15 U.S.C. § 1692k.

15.     Statutory damages under the FCCPA are also capped at $1,000 per action, regardless of the number of alleged FCCPA violations asserted in the action.  *See* Florida Statutes § 559.77(2).

16.     Padova impermissibly seeks recovery well in excess of that which is allowed under well-established law.

17.     Padova's multiple claims fail to raise a justiciable issue of law or fact, and were brought in bad faith and for the purpose of harassment, in violation of both 15 U.S.C. § 1692k(a)(3) and Florida Statutes § 559.77(2).

18.     Padova unreasonably and vexatiously multiplied the proceedings in this matter, in violation of 28 U.S.C. § 1927.

The above affirmative defenses are based on the facts currently known to Carrington, and Carrington reserves the right to amend or add affirmative defenses based on facts that may later be discovered, pled, or offered.

WHEREFORE, Carrington requests that judgment be entered in its favor and against Padova, with costs and attorney's fees assessed, and requests that this Court provide such further and additional relief as it deems just and appropriate.

Dated:  September 18, 2013             Respectfully submitted,

**CARRINGTON MORTGAGE SERVICES, LLC**

By:     s/ Hector E. Lora, Esq.
MCGINNIS WUTSCHER BEIRAMEE LLP
Florida Bar No. 755842
110 E. Broward Blvd.
Suite 1700
Fort Lauderdale, FL  33301
Direct:  (786) 553-8082
Fax:  (866) 581-9302
E-mail: hlora@mwbllp.com

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing document and any related exhibits was served this **18th day of September, 2013** using the court's CM/ECF system on all parties who are registered  users, and by United States Mail on the following:

Seth Wieder, Esq.
Yechezkel "Chezky" Rodal, Esq.
Loan Lawyers, LLC
Counsel for plaintiff
377 N. State Road 7, Suite #202
Plantation, Florida 33317
Email:  seth@floridaloanlawyers.com; chezky@floridaloanlawyers.com


s/ Hector E. Lora, Esq.